Ryan P. Poscablo, *pro hac vice*
**Steptoe & Johnson LLP**
114 Avenue of the Americas
New York, NY 10036
Email: rposcablo@steptoe.com
Tel:     (212) 506-3921
Fax:    (212) 506-3950

Steven H. Levin, *pro hac vice*
**Steptoe & Johnson LLP**
1330 Connecticut Avenue NW
Washington, D.C. 20036
Email: slevin@steptoe.com
Tel:     (202) 429-9169
Fax:    (202) 429-3902

Attorneys for Defendant
Hyoung Nam So

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    vs.<br><br>HYOUNG NAM SO,<br>   aka "Brian So,"<br><br>         Defendant | Case No. 2:22-CR-00108-AB<br><br>DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 |

   Defendant HYOUNG NAM SO (Mr. So), by and through his counsel of record, hereby moves and files the instant Motion for a Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29.

   Defendant's motion is based on the attached memorandum of points and authorities; the evidence referenced in the attached; the files, records and transcripts in this case and the other cases cited herein; and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: November 15, 2023         Respectfully submitted,

                                 /s/ *Ryan P. Poscablo*
                                 Attorney for Defendant,
                                 BRIAN SO

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION & RELEVANT FACTUAL BACKGROUND

On March 23, 2022, Hyoung Nam So (Mr. So) was charged in a single count, single defendant Indictment. [Dkt. 1]. The government alleged Mr. So committed a violation of 18 U.S.C. § 371, conspiracy to commit federal funds bribery (18 U.S.C. § 666). In part, the government alleged that "Company A [i.e., General Motors] received more than $10,000 through federal assistance programs"—and that the purported bribe involved the receipt of federal funds. [Dkt. 1, p. 1]. The government must prove this fact, beyond a reasonable doubt, to satisfy the jurisdictional nexus required here. [Dkt. 1, p. 3].

To do so, the government relies on three contracts executed between General Motors and the Department of Energy's National Energy Technology Lab (NETL). NETL is an organization overseen by the Department of Energy (DOE) and is "the nation's premier energy technology laboratory that delivers integrated solutions to enable America's transformation to a decarbonized energy future." *Organization*, National Energy Technology Laboratory, accessed at: https://netl.doe.gov/about/organization. The NETL acts as the "DOE's only government-owned, government-operated laboratory (GO-GO)." *Id*.

Each contract is briefly summarized here.

### A. Award No. DE-EE0006826

On December 19, 2014, the NETL engaged in an agreement with GM, wherein the parties agreed that GM would facilitate research related to "development and integration of predictive models for manufacturing and structural performance of carbon fiber composites in automotive applications." [GX450]. This agreement was characterized as Award No. DE-EE0006826. It was described as a "cooperative agreement" rather than a "grant" or "other" type of agreement. [GX450, p. 1]. The project period was estimated to extend from December 19, 2014, through December 18, 2018. [GX450A].

According to the terms and conditions, the government agreed to allocate $6,000,000 towards the research (70%) and GM agreed to pay $2,571,429 (30%).

[GX450A, p. 2]. The outlined payment schedule called for a *reimbursement* of funds rather than a proactive deposit of funds and or a mere gift for a specific purpose. *See*, [GX450A, p. 17] ("Payment will be made by reimbursement through ACH.").

Only after work was performed would GM be permitted to seek the reimbursement of funds related to its labor, supplies, overhead, and other funds expended for the research contract. [GX450B]. The defense agrees that GM *requested* reimbursements in an amount exceeding $10,000 between April 13, 2015 (Invoice 1) and January 11, 2017 (Invoice 22). [GX450B]. To establish that GM *actually received* the funds, however, the government has submitted a printout that purports to show that invoices were sent and then paid. [GX450B]. However, there are no records to establish that the funds were actually sent and received by GM.

### B. Award No. DE-EE0007284

On December 8, 2015, NETL engaged in an additional agreement with GM, identified as award number DE-EE0007284. The purpose of the agreement was to research "high fidelity fast running multiscale Multiphysics battery pack software." [GX451, p. 1]. This agreement, much like others, were described as a "cooperative agreement"—not a "grant" or "other" type of exchange. [*Id*.]. According to the terms and conditions, the government agreed to allocate 80 percent of the share with GM contributing 20% of the research costs with a total estimated amount of $3,694,200. [GX451A, p. 14]. It appears, however, that the DOE later amended this initial proposal and contributed significantly less than its initial projections. [GX451, p. 5].

Subsequent to the work being performed, GM sought reimbursement of funds related to its labor, supplies, overhead, and other funds expended for the research contract. [GX451B]. Pursuant to the terms of the agreement, GM submitted invoices between the periods of March 10, 2016, and September 16, 2016. [GX451A, pgs. 1, 7].

However, the government has not definitively proven that GM actually received government funds related to this work. In an attempt to prove that GM truly *received* these funds, the government has submitted a printout that purports to establish that the invoices

were paid. [GX451B, p. 8]. The government has not provided any records that the funds requested were actually received.

C. Award No. DE-EE0007311

On December 14, 2015, General Motors engaged in an additional "Assistance Agreement" with the NETL. [GX200]. Award number DE-EE00007311 was characterized as a "cooperative agreement" rather than a "grant" or other source of relationship. [DX200]. This project called for the description of "Friction Stir Scribe Joining of Carbon Fiber Reinforced Polymer to Aluminum." [GX200, p. 1]. It was agreed that General Motors and the DOE's Energy Efficiency & Renewable Energy (EERE) division would split the costs associated with the research. [GX452A, p. 15]. Much like the other initiatives, GM was instructed to request reimbursements for costs incurred in connection with the shared endeavor. [GM452A, p. 17-18].

In a purported attempt to establish the funds were *received* by GM, the government has admitted government exhibits 200B and 452B. These invoices, produced by GM, establish that the government sought *reimbursement* for various funds expended in furtherance of the common research project. [GX200B, GX452B]. Government Exhibit 200 describes the hours, personnel expenses, fringe benefits, and other costs incurred by GM in connection with the agreed upon project. [GX200B]. This exhibit also establishes that GM billed for the work expended by various employees for their labor. [GX200B, p. 2].

However, there is no evidence that the funds requested were actually *received*. Instead, the government has merely submitted an exhibit that references the invoices as "paid." [GX452B, pgs. 9-10]. In addition, the government admitted a single screenshot that seemingly depicts some sort of money transfer from a Chase Bank account to an entity entitled, "General Motors LLC." [GX200B]. But there is no actual proof, aside from an internal database, that an electronic payment—or any form of payment—was actually received by GM.

## II.     LEGAL FRAMEWORK

Federal Rule of Criminal Procedure 29 provides, "after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion *must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction*." Fed. R. Crim. Pro. 29(a) (emphasis added). A judgment of acquittal is meant "to be predicated on a finding that the evidence is insufficient to support a conviction. . ." *United States v. Affinito*, 873 F.2d 1261, 1264 (9th Cir. 1989).

The granting of a motion for judgment of acquittal is warranted after evidence presented during the government's case is closed and evidence offered by government will not sustain conviction as to count charged. *United States v. Lopez*, 625 F.2d 889 (9th Cir. 1980). It is "well-settled that a district court does not have unlimited discretion" in deciding a Rule 29 motion for judgment of acquittal. *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978). In deciding a Rule 29(c) motion, the district court is required to determine whether at the time the motion was made, was there relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing evidence in light favorable to the government. *Id., citing United States v. Figueroa-Paz*, 468. F.2d 1055, 1058 (9th Cir. 1972).

The offense at issue is a violation of 18 U.S.C. § 371: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

The Indictment charging Mr. So alleges that defendant conspired to "to commit an offense against the United States, specifically, bribery concerning programs receiving Federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(B)." [Dkt. 1, p. 3].This section describes that whoever acts as "an agent of an organization, or of a State, local or Indian tribal government, or any agency thereof – corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent

of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . ." shall be imprisoned or fined under this section. 18 U.S.C. § 666(1)(a)(B).

This code requires that "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(1)(b). Although Mr. So was charged with conspiracy to commit federal funds bribery—rather than the substantive offense alone—the government must establish the requisite nexus. *See, United States v. Turchin*, 21 F.4th 1192, 1203 (9th Cir. 2022) (The Court reviews "the sufficiency of the evidence supporting the federal nexus element of the alleged conspiracy to violate § 666" through an analysis of whether the government presented sufficient evidence of federal benefit in excess of $10,000).

Section 666 "focuses on the integrity of federal funding" and "requires proof of such receipt" of federal funds. *United States v. Seng*, 934 F.3d 110, 128 (2d Cir. 2019); *see also, United States v. Crook*, 213 Fed. Appx. 754 (10th Cir. 2007) (18 U.S.C. § 666 requires proof that an entity *received* at least $10,000 annually from the federal government). The statute's design "was generally to 'protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." *Sabri v. United States*, 541 U.S. 600, 606 (2004), *citing* S. Rep. No. 98-225, p. 370 (1983).

But the statute "does not apply the bona fide salary, wages, fees, or other compensation paid, or expenses paid *or reimbursed*, in the usual course of business." 18 U.S.C. § 666(c). The Supreme Court has determined that the term *benefit* is to be construed "in a manner consistent with Congress' intent not to reach the enumerated class of transactions." *Fischer v. United States*, 529 U.S. 667, 679 (2000), *citing* S. Rep. No. 98-225, p. 370 (1984) ("[N]ot every Federal contract or disbursement of funds would be covered [under § 666]. For example, if a government agency lawfully purchases more than

$10,000 in equipment from a supplier, it is not the intent of this section to make a theft of $5,000 or more from the supplier a Federal crime.").

The inquiry is whether "the funds disbursed can be considered Federal assistance within a specific statutory scheme intended to promote public policy objectives and not payments by the government as a commercial entity." *United States v. Rooney*, 968 F.2d 31, 35 (2d. Cir. 1993). The situations in which Congress has specifically intended for the statute to apply "involve a charitable distribution of funds; that is, the federal government distributing funds for the purpose of aiding the needy and *receiving no tangible material return for its funds*." *United States v. Stewart*, 727 F. Supp. 1068, 1071 (N.D. Tx. 1989)(emphasis added); *see also United States v. Webb*, 691 F. Supp. 1164, 1170 (N.D. Il. 1988)(An accounting firm, who received funds for managing section 8 housing disbursements on behalf of the government was not an organization that received benefits for the purposes of §666—the relevant organization did not receive *direct* benefit from the federal funds which it administered" and did not control how the funds would be disbursed); *United States v. Copeland*, 143 F.3d 1439, 1442-43 (11th Cir. 1998)(An employee of Lockheed Aeronautics Systems Company, a prime contractor with the Department of Defense did not fall under the purview of § 666 because of the exchange of commercial services between the company and the government—despite the government's claims that the commercial transactions had significant oversight from the government and that Congress annually appropriates specific sums for aircraft procurement, testing, and research and development).

"Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute [18 U.S.C. §666] does not employ this broad, almost limitless use of the term. Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance." *Fischer v. United States*, 529 U.S. 667, 681 (2000).

To determine "whether an organization participating in a federal assistance program receives 'benefits,' an examination must be undertaken of the program's structure, operation and purpose." *Id.* This inquiry "should examine the conditions under which the

organization receives the federal payments. The answer could depend . . . on whether the recipient's own operations are one of the reasons for maintaining the program." *Id.*

Defendant maintains that the government has failed to prove each of the elements beyond a reasonable doubt—and as such, the court must enter a judgment of acquittal on the offense charged. However, the instant request focuses only on the government's failure to establish the jurisdictional nexus required to convict Mr. So of conspiring to commit federal funds bribery in violation of 18 U.S.C. § 666.

*First*, the government has failed to prove that General Motors *actually received* government funds. The defense agrees that the value of the contracts, and the invoices purportedly submitted to the Department of Energy exceed $10,000. However, the government has failed to submit any documentation establishing that GM was in actual receipt of the funds. In support of this *receipt* requirement, the government has presented various reimbursement requests (i.e., invoices) and an internal database printout that attempt to show the invoices were notated as "paid." *See, e.g.*, [GX200B, GX452B, GX400B, GX401B]. However, the government has failed to present any evidence indicating that the sums of money requested made their way into the GM accounts. The government has failed to call a single witness from either General Motors or the Department of Energy that could confirm or deny this assertion. The government has failed to set forth any bank statements that show the actual exchange of funds and the deposit of the requested amount into GM's possession. The government has failed to satisfy this requirement.

*Second*, the government has not shown, beyond a reasonable doubt, that General Motors received a *benefit* for the purposes of § 666. The instant agreements between General Motors and Department of Energy are not ones wherein the government is subsidizing a vulnerable group of people or providing a non-profit with much needed funds to help local communities. Instead, the DOE is receiving a tangible benefit for the money it contributes to GM. The DOE has contracted with GM to perform labor that it is unable to fulfill independently. The nature of the three projects makes clear that the DOE

has simply engaged with GM to complete research projects it lacks the infrastructure to complete: (1) the development of predictive models for manufacturing and structural performance of carbon fiber composites in automotive applications; (2) high fidelity fast running battery pack software; (3) friction stir scribe joining of carbon fiber reinforced polymer to aluminum.

Only after GM has performed work in connection with its various research projects, will GM purportedly receive reimbursements for the costs and labor incurred. The only thing that sets this contract apart from a typical exchange of services is GM's willingness to contribute financially to these endeavors. In further support of this exchange of tangible services, the government described this contract as a "cooperative agreement" rather than a grant or other type of contribution. GM does not receive any direct benefit from this award aside from its reimbursement for its research and development practices. As a result, the defense maintains that the funds allegedly *received* by General Motors were not the type of *benefits* envisioned my Congress. Instead, they were an exchange of service, by way of reimbursements, specifically excluded from the statute.

*Third*, defendant objects to the expansive reach of 18 U.S.C. § 666 and its constitutionality as applied to defendant. *See, Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (A statute must describe with some particularity the conduct is proscribes or requires). In the instant matter, the evidence has established that Mr. So was previously a mid-level manager with General Motors. As described here, the government contends that General Motors received funds from United States Department of Energy to perform various research and development projects.

As a result of Mr. So's mere employment with General Motors, unrelated to the federal funds at issue, he is being prosecuted in federal court. The vagueness of the statute exposes individuals like Mr. So to arbitrary and discriminatory federal prosecutions. Should a grocery store clerk accept a sizeable sum to gain early access to a popular food item, he too could be charged under § 666—simply because the grocery store receives federal food stamps monies. Defendant objects to the constitutionality of this statute as

applied to defendant.

Based on the foregoing, Mr. So respectfully requests that the Court enter a judgment of acquittal based on the government's failure to establish the jurisdictional nexus element of the charged offense.

### III. CONCLUSION

Mr. So respectfully requests that the Court grant defendant's Motion for a Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29.

Dated: November 14, 2023                    Respectfully submitted,

/s/ *Ryan P. Poscablo*
Attorney for Defendant,
BRIAN SO